UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

ANMBREEN SHAH,

                              Plaintiff,                    **OPINION AND ORDER**

         -against-                                  21-cv-6428 (AEK)

WAL-MART STORES EAST, LP,

                              Defendant.

------------------------------------------------------------x

**THE HONORABLE ANDREW E. KRAUSE, U.S.M.J.**[1]

      Plaintiff Anmbreen Shah brings this action against Defendant Wal-Mart Stores East, LP ("Wal-Mart"), seeking to recover for personal injuries she allegedly suffered while shopping in a Wal-Mart store located in Monroe, New York. *See* ECF No. 1-1. Before the Court is Defendant's motion for summary judgment. ECF Nos. 26 (Notice of Motion), 28 (Memorandum of Law or "Def.'s Mem."). For the reasons that follow, Defendant's motion is DENIED.

## BACKGROUND

**A.    Factual Background**

      The following facts are undisputed unless otherwise noted and are taken from Defendant's Local Civil Rule 56.1 Statement of Undisputed Material Facts, ECF No. 27 ("Def.'s 56.1 Statement"), Plaintiff's Answer in Opposition and Response to Defendant's Rule 56.1

---

[1] The parties have consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636(c). ECF No. 34.

Statement, ECF No. 29-1 ("Pl.'s 56.1 Resp."), Defendant's Reply to Plaintiff's Response to Defendant's 56.1 Statement, ECF No. 32, and the exhibits submitted by the parties.[2]

On the evening of June 21, 2020, Plaintiff was shopping in a Wal-Mart store located in Monroe, New York.  Def.'s 56.1 Statement ¶ 1; ECF No. 27-1 ("O'Connor Aff.") Ex. C ("Shah Dep.") at 31:11-13.  Plaintiff visited this particular Wal-Mart store on a weekly basis.  Def.'s 56.1 Statement ¶ 1.  Upon entering the store, Plaintiff went first to the boys clothing section.  Shah Dep. at 31:14-32:4.  While walking between the boys clothing section and the baby clothing section, a "whole steel rack on [Plaintiff's] right-hand side fell on [her]."  *Id.* at 32:5-11, 38:4-25; Def.'s 56.1 Statement ¶ 2.  Plaintiff described the rack that fell on her as follows:

> [T]hey're big, they are steel racks, they are huge and they have two bars that come out of them to hold clothing on, one that is above my eye level, a bar coming out horizontally from a vertical rack that looks like that and one above my eye level and then there is usually one rack that is, like by my chest here, and they usually have clothes up and down on those bars coming out from the big rack steel thing and they are usually fixed into the walls on either side.

Shah Dep. at 136:8-22.

---

[2] Pursuant to the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, a party opposing a motion for summary judgment "shall include" with his or her opposition brief, "if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried."  Local Civ. R. 56.1(b).  Instead of submitting a Local Civil Rule 56.1 Statement, Plaintiff included a "statement of facts" in her opposition brief, which highlights certain purported facts with citations to the deposition evidence in this case.  *See* ECF No. 30 ("Pl.'s Mem.") at 2-5.  Although Plaintiff's submission does not comply with the Local Rules, in this instance, the Court has exercised its "broad discretion to determine whether to overlook a party's failure to comply with local court rules," and has opted to conduct an "assiduous review of the record" for purposes of deciding the instant motion.  *See Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) (quotation marks omitted).  For future reference, Plaintiff's counsel is hereby directed to conduct a careful and thorough review of the Local Rules to ensure all future submissions in this and other cases in this District are in compliance with those Rules.

Before the rack fell on her, Plaintiff had not made any contact with the rack. Def.'s 56.1 Statement ¶ 6; Shah Dep. at 39:15-21. Plaintiff also did not observe anyone else touch the rack before it fell on her. Def.'s 56.1 Statement ¶ 7; Shah Dep. at 39:22-25.

Plaintiff deposed former Wal-Mart employee Glenn Anton, who, at the time of the incident, was a "customer service manager" in the Monroe Wal-Mart store. ECF No. 29 ("Jacobsen Aff.") Ex. 1 ("Anton Dep.") at 9:25-10:17, 42:20-43:10. As a customer service manager, Mr. Anton was responsible for "supporting the cashiers [and] the returns section employees," which involved "managing their work, their breaks, [and] assisting them when necessary to help the customers complete their purchases or returning products." *Id.* at 10:18-25. In February 2021, Mr. Anton was promoted to "support manager," which involved "supporting the assistant store managers as well as the store managers in the function of the overall store," including by "helping with items return to the shelves . . . [and] making sure the aisles were clean and safe." *Id.* at 10:13-17, 11:2-10. Mr. Anton testified that he had "worked side by side with employees helping them adjust shelving," that he "would watch videos of shelving," and that he had "hands-on experience . . . working with shelving[,] . . . adjusting shelving and putting shelving together [] based on instruction from management." *Id.* at 19:11-21.

Mr. Anton was working on the date of the incident and was either the first or second Wal-Mart employee to arrive at the scene after the rack fell. *Id.* at 25:10-26:19. At the scene, Mr. Anton observed Plaintiff "lying on the floor screaming in pain" and "the metal racking dislodge[d] close by to her . . . ." *Id.* at 27:13-25. As someone who Mr. Anton believed to be a medical professional attended to Plaintiff, Mr. Anton cleared the area and moved the metal rack out of the way. *Id.* at 28:2-18. Mr. Anton observed as an ambulance arrived and Plaintiff was taken from the store on a stretcher. *See id.* at 31:16-19.

Mr. Anton was shown a series of photographs[3] and identified the structure pictured as a "shelving rack" that may be adjusted "according to the merchandise that would be placed on it"; he testified that Wal-Mart employees were able to both adjust the bars that attached to the rack and also to "remove the shelving itself from the wall." *Id.* at 16:25-19:10.  During his tenure at Wal-Mart, Mr. Anton saw "changes of products or shelving structures move [within the store] some, but not that often"; he explained that "the footprint of . . . these metal type structures[] remain in their spots a majority of the time." *Id.* at 22:2-11.  Mr. Anton also testified that "if built correctly, it would take a good amount of force to dislodge" this sort of shelving structure, but that "[i]f the item was not put on properly it would, if hit or pushed or made contact with, . . . possibly fall or lean over . . . ." *Id.* at 22:24-23:11.  Moreover, Mr. Anton stated that if the shelving rack was assembled properly, "[s]omeone actually bumping into [the shelving] would not affect the position or the possibility of the product dislodging." *Id.* at 23:12-24:3.

Mr. Anton also testified that the structure that fell on Plaintiff was attached to an "end cap," which he defined as "basically the end of shelving on two sides so far as being able to hold

---

[3] As part of her opposition to the motion, Plaintiff submitted five photographs, described by counsel as "photographs that were utilized during depositions and identified by the witnesses." Jacobsen Aff. ¶ 2; *see id.* Ex. 2.  Both Plaintiff and Mr. Anton were shown a series of five photographs during their depositions, though Plaintiff was questioned about photographs identified as "Exhibits D through H," while Mr. Anton was questioned about five photographs identified together as "Exhibit 1." *See* Shah Dep. at 136:23-142:12; Anton Dep. at 17:10-15.  Because the images submitted by Plaintiff do not contain any identifiers corresponding to those used during the depositions, the Court is unable to match the testimony to the photographs with any certainty.  Nevertheless, given that the witnesses testified that the photographs shown to them at their respective depositions accurately depict shelving in Defendant's store, *see* Shah Dep. at 137:18-25, 139:5-25; Anton Dep. at 17:10-23, 18:11-21, the Court has considered these photographs for that limited purpose.

merchandise."[4]  *Id.* at 36:16-25.  In addition, Mr. Anton testified that he did not recall precisely how the shelving rack was meant to attach to an end cap.  *Id.* at 39:2-13.

**B.    Procedural History**

Plaintiff initiated this action by filing a complaint in the Supreme Court of the State of New York, Orange County on December 31, 2020.  *See* ECF No. 1-1 ("Complaint" or "Compl.").  On July 28, 2021, Defendant removed this matter to federal court based on diversity of citizenship between the parties pursuant to 28 U.S.C. §§ 1332, 1441(b), and 1446.  ECF No. 1.  Defendant filed its motion for summary judgment on November 18, 2022.  ECF Nos. 26-28.  On January 31, 2023, Plaintiff submitted her opposition to the motion.  ECF Nos. 29-30.  The motion was fully submitted on February 13, 2023 when Defendant filed its reply brief.  ECF Nos. 31-32.

## STANDARD OF REVIEW

**A.    Summary Judgment Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 320-23 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material fact exists, a court is required to "resolv[e] all record ambiguities and draw[] all factual inferences in favor of the non-moving party."  *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135,

---

[4] Although this is contrary to Plaintiff's testimony that she believed the rack that fell on her had been attached to a wall, *see* Shah Dep. at 136:23-137:8, this factual dispute is not material for purposes of the instant motion.

145 (2d Cir. 2007); *see also Anderson*, 477 U.S. at 261 n.2; *Mount Vernon Fire Ins. Co. v. Belize NY, Inc.*, 277 F.3d 232, 236 (2d Cir. 2002); *Farias v. Instructional Sys., Inc.*, 259 F.3d 91, 97 (2d Cir. 2001). A party cannot overcome summary judgment by relying on "mere speculation or conjecture as to the true nature of the facts" because "conclusory allegations or denials" cannot "create" genuine disputes of material fact "where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quotation marks omitted). "Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." *Cruden v. Bank of N.Y.*, 957 F.2d 961, 975 (2d Cir. 1992) (citing *H.L. Hayden Co. v. Siemens Med. Sys. Inc.*, 879 F.2d 1005, 1011 (2d Cir. 1989)).

**B.     Burden of Proof**

While New York law governs Plaintiff's substantive personal injury claim,[5] federal law applies to procedural aspects of the claim. *Hanna v. Plumer*, 380 U.S. 460, 465 (1965). "Because the moving party's burden of proof on a summary judgment motion is procedural, it is therefore governed by federal law." *Ricci v. Wal-Mart Stores East, LP*, No. 16-cv-6920 (JCM), 2018 WL 4308556, at *4 (S.D.N.Y. Sept. 10, 2018) (collecting cases). Although "in New York state court the [d]efendant would have to demonstrate it neither created the condition nor had notice of it, in federal court the [d]efendant, as the moving party, may point to the absence of evidence that it caused or had notice of the hazard, and thereby shift the burden to the [p]laintiff to create an issue for trial through specific factual assertions." *Rodriguez v. Wal-Mart Stores East, LP*, No. 16-cv-2603 (CS), 2017 WL 4045745, at *3 (S.D.N.Y. Sept. 11, 2017); *accord Vasquez v. United States*, No. 14-cv-1510 (DF), 2016 WL 315879, at *4 (S.D.N.Y. Jan. 15,

---

[5] Because jurisdiction over this matter is based upon the parties' diversity of citizenship and the alleged acts occurred in New York, New York law governs the substantive claims. *Moy v. Target Corp.*, 629 F. Supp. 3d 205, 209 n.6 (S.D.N.Y. 2022).

2016) (quoting *Levine v. Amverserve Ass'n, Inc.*, 938 N.Y.S.2d 593, 593 (2d Dep't 2012)). Put another way, the moving party "need not make any affirmative *prima facie* showing on [a] motion for summary judgment, and may discharge its burden of proof merely by pointing to an absence of evidence to support an essential element of [plaintiff's] claim." *Vasquez*, 2016 WL 315879, at *5 (quotation marks omitted). If a defendant sustains that burden, the burden then shifts to the plaintiff to present evidence and demonstrate that a genuine issue of material fact exists for trial. *Celotex*, 477 U.S. at 322-24.

## DISCUSSION

### A.  Applicable Law

Plaintiff asserts that Defendant's negligence caused her to sustain injuries on June 21, 2020 at the Monroe Wal-Mart store. "To establish a *prima facie* case of negligence under New York law, 'a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom.'" *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006) (quoting *Solomon ex rel. Solomon v. City of New York*, 489 N.E.2d 1294, 1294-95 (N.Y. 1985)). In the context of premises liability, "the plaintiff must show that there was a dangerous or defective condition that caused the accident, and that the defendant either created the defective condition, or had actual or constructive notice thereof." *Moy*, 629 F. Supp. 3d at 209-10 (cleaned up). "'Where the defendant created the dangerous condition, actual notice is presumed.'" *Lionel v. Target Corp.*, 44 F. Supp. 3d 315, 319 n.4 (E.D.N.Y. 2014) (quoting *Rose v. Da Ecib USA*, 259 A.D.2d 258, 260 (1st Dep't 1999)). Under New York law, Plaintiff bears the burden of proof on the elements of her premises liability claim. *See Tenay v. Culinary Teachers Ass'n of Hyde Park*, 281 F. App'x 11, 13 (2d Cir. 2008) (summary order).

Additionally, a plaintiff alleging negligence may, in certain circumstances, proceed under a theory of *res ipsa loquitur*, which "enables a jury presented only with circumstantial evidence to infer negligence simply from the fact that an event happened." *St. Paul Fire & Marine Ins. Co. v. City of New York*, 907 F.2d 299, 302 (2d Cir. 1990); *accord Rodriguez v. Athenium House Corp.*, 557 F. App'x 37, 38 (2d Cir. 2014) (summary order). In premises liability cases, this doctrine "does not require the plaintiff to prove the elements usually necessary to state a negligence claim, including notice." *Looney v. Macy's Inc.*, 588 F. Supp. 3d 328, 342 (E.D.N.Y. 2021).

Defendant argues, and Plaintiff does not contest, that there is no evidence to show that it had constructive notice of a dangerous condition.[6] *See* Def.'s Mem. at 7-10; *see also* Pl.'s Mem. at 10. Thus, the only issues in dispute are whether Plaintiff can proceed under a *res ipsa loquitur* theory of negligence and whether Defendant created, and therefore had actual notice of, a dangerous condition that allegedly injured Plaintiff.

B.   ***Res Ipsa Loquitur***

In her opposition to Defendant's motion, Plaintiff maintains that summary judgment must be denied based on the doctrine of *res ipsa loquitur*. *See* Pl.'s Mem. at 7-9. Although Plaintiff did not expressly invoke *res ipsa loquitur* in the Complaint, "the failure to plead *res ipsa loquitur* as a theory of liability does not render the doctrine unavailable at a later time in the action."

---

[6] Plaintiff asserted in her Bill of Particulars that Defendant had constructive notice of a dangerous condition, *see* O'Connor Aff. Ex. B ¶¶ 6-8, and Defendant therefore offered arguments in its memorandum of law for why there is insufficient evidence to proceed on a constructive notice theory. Plaintiff failed to respond to Defendant's constructive notice argument in her opposition. Thus, to the extent Plaintiff had any arguments relating to constructive notice, those arguments have been waived. *See Burden v. Wal-Mart Stores East, LP*, No. 17-cv-1289 (KMK), 2018 WL 4680025, at *4 n.5 (S.D.N.Y. Sept. 28, 2018) (citing *Palmieri v. Lynch*, 392 F.3d 73, 87 (2d Cir. 2004)).

*Miller v. Target Corp.*, No. 12-cv-4747 (PED), 2014 WL 12543821, at *6 (S.D.N.Y. Oct. 31, 2014) (quotation marks omitted); *see also Williams v. Forward Realty Corp.*, 198 A.D.3d 503, 504 (1st Dep't 2021) ("Plaintiff's failure to specifically plead *res ipsa loquitur* does not bar her from invoking the doctrine where, as here, the facts warrant its application."). "This is because *res ipsa loquitur* is not a separate theory of liability but, rather, amounts to nothing more than a common-sense application of the probative value of circumstantial evidence." *Miller*, 2014 WL 12543821, at *6 (quotation marks omitted). Because Plaintiff adequately pled a cause of action for negligence in the Complaint, *see* Compl. ¶¶ 24-25, she may raise *res ipsa loquitur* as a theory of liability at this stage.

"'In order to justify a *res ipsa loquitur* theory, a plaintiff must demonstrate that (1) the event was of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it was caused by an agency or instrumentality within the exclusive control of the defendant; and (3) it was not due to any voluntary action or contribution on the part of the plaintiff.'" *Looney*, 588 F. Supp. 3d at 349-50 (brackets omitted) (quoting *Potthast v. Metro-North R.R. Co.*, 400 F.3d 143, 149 (2d Cir. 2005)).

Defendant does not argue, for purposes of its summary judgment motion, that shelving racks[7] do not ordinarily fall in the absence of someone's negligence or that Plaintiff contributed to the shelving rack falling. Instead, Defendant focuses on the second element, asserting that the shelving rack was not within Defendant's exclusive control. *See* Def.'s Mem. at 11; Def.'s Reply at 3-4.

---

[7] Although the parties use different terms to refer to the item that fell on Plaintiff, the Court refers to it as a "shelving rack" for purposes of consistency throughout the analysis portion of this decision.

The purpose of the "exclusive control" requirement is "simply to eliminate within reason all explanations for the injury other than the defendant's negligence." *Dermatossian v. N.Y.C. Transit Auth.*, 67 N.Y.2d 219, 227 (1986).  In order to establish this element, it is "not necessary for the plaintiff to altogether eliminate the possibility of other causes of the injury-causing malfunction, but only that their likelihood must be so reduced that the greater probability lies at defendant's door." *Stone v. Courtyard Mgmt. Corp.*, 353 F.3d 155, 158 (2d Cir. 2003) (quotation marks omitted); *see also Mejia v. N.Y.C. Transit Auth.*, 291 A.D.2d 225, 227 (1st Dep't 2002) (the purpose of the "exclusive control" requirement "is to confine the application of the doctrine to those situations where it is more likely than not that defendant caused the accident").  For premises liability actions involving retailers, courts have found that the exclusivity element is satisfied when customers "do not have reasonable access to" or "are not expected to handle" the injury-causing instrumentality.  *Pannell v. Target Corp.*, No. 11-cv-7326 (PAC), 2013 WL 2247013, at *3 (S.D.N.Y. May 22, 2013) (citing *Durso v. Wal-Mart Stores, Inc.*, 270 A.D.2d 877 (4th Dep't 2000); *Ciciarelli v. Ames Dep't Stores, Inc.*, 162 A.D.2d 996 (4th Dep't 1990)); *see also Pavon v. Rudin*, 254 A.D.2d 143, 146 (1st Dep't 1998) (explaining that in analyzing the "exclusive control" element of *res ipsa loquitur*, "[t]he appropriate target of inquiry is whether the broken component itself was generally handled by the public, not whether the public used the larger object to which the defective piece was attached").

The evidence adduced by Plaintiff here could enable a reasonable jury to find that Wal-Mart had exclusive control of the shelving rack in the Monroe store, because customers did not generally handle the mechanism whereby the shelving rack was affixed to the wall or end cap. Images submitted by Plaintiff demonstrate how Defendant's shelving racks are mounted and show that the portions that affix to the wall or end cap are not readily exposed to customers.  *See*

Jacobsen Aff. Ex. 2 at 2, 4.  Moreover, Mr. Anton testified that these types of shelving structures at the Monroe Wal-Mart were intended to be able to withstand the sort of normal bumping and prodding that is associated with operating a large retail store.  See Anton Dep. at 23:12-24:3.  This testimony, together with Mr. Anton's statement that Defendant's shelves should not fall "if built correctly," *id.* at 22:24-23:11, support the inference that the cause of the malfunction in this instance "lies at defendant's door,"[8] *see Stone*, 353 F.3d at 158.

Defendant responds that the endcap "stood upon the floor" of Defendant's store and that "customers had unfettered access" to the end cap, thus removing it from Defendant's exclusive control.  See Def.'s Reply at 5-6.  But courts do not interpret "exclusive control" as narrowly as Defendant urges here.  See *Pannell*, 2013 WL 2247013, at *3 ("In New York, courts do not rigidly apply the concept of exclusive control, but instead observe that it should be 'subordinated to its general purpose, that of indicating that it *probably* was the defendant's negligence which caused the accident.'" (quoting *Corcoran v. Banner Super Mkt., Inc.,* 19 N.Y.2d 425, 432 (1967)); *Pavon*, 254 A.D.2d at 145-46.  For example, in *Pannell*, a child was struck by boxes of bookcases that fell from a shelf that was approximately five feet high and that suddenly malfunctioned.  See 2013 WL 2247013, at *1, 4.  The court denied the defendant's motion for summary judgment based on an application of *res ipsa loquitur*, rejecting the defendant's argument that it did not have exclusive control over the boxes or shelf, and reasoning that the "instrumentality" at issue was not the shelf that collapsed or the boxes that struck the child, but

---

[8] Defendant takes issue with Plaintiff's reliance on certain portions of Mr. Anton's testimony, arguing that Mr. Anton testified about individual shelves rather than the overall shelving rack.  See Def.'s Reply at 3-4, 6.  Although there is some ambiguity in portions of Mr. Anton's testimony as to whether he is referring to individual shelves or shelving racks as a whole, the Court is required to resolve any ambiguities at this juncture in favor of Plaintiff.  See *ITC Ltd.*, 482 F.3d at 145.

more specifically the "prong-and-hole assembly o[f] the shelf itself," which was unlikely to be accessed by customers and thus was within the defendant's exclusive control. *Id.* at *3-4. Similarly, in *Bonventre v. Max*, 229 A.D.2d 557 (2d Dep't 1996), an intermediate New York appellate court held that the plaintiff had produced sufficient evidence supporting the *res ipsa loquitur* theory of negligence to allow the matter to be submitted to a jury where the plaintiff showed that a "mirrored wall panel with shelves" fell on her while she was visiting a store. *Id.* at 557-58. The court explained that the plaintiff "need not have shown that the defendants were the only ones in control of the panel," but rather "that the defendants' control was of sufficient exclusivity to fairly rule out the chance that any purported defect was caused by some other agency." *Id.* at 558 (quotation marks omitted); *see also id.* ("While the public may have touched the shelving in question, that does not explain the collapse of the entire panel.").

Here, like the shelf in *Pannell* and the wall panel in *Bonventre*, Defendant's shelving rack was placed out in the store, but the portion of the shelving rack that Plaintiff maintains created a hazardous condition—the mechanism that connected the shelving rack to the end cap or wall—was not. A reasonable jury could conclude that this portion of the shelving rack was not expected to be regularly handled by Wal-Mart customers, and customers seeking to retrieve merchandise from the shelving rack would have no reason to "jostle, forcefully tug on or otherwise disturb" the portion connecting the structures. *See Pannell*, 2013 WL 2247013, at *4.

In sum, this sort of fact pattern, in which a plaintiff cannot clearly articulate exactly how a fixture in a store came to fall on her, "is precisely why we have *res ipsa*—to address situations in which plaintiffs cannot explain the exact cause of the accident, but the circumstances are such that the defendant's negligence can be inferred." *Id.*

12

For all of these reasons, Defendant's motion for summary judgment as to the doctrine of *res ipsa loquitur* is DENIED.

### C. Creation of a Dangerous Condition

Wal-Mart also argues that there is insufficient evidence that it created a dangerous condition. *See* Def.'s Mem. at 5-7. The Court disagrees.

"To establish that a defendant created a dangerous condition or defect, a plaintiff must point to 'some affirmative act' on the part of the defendant." *Vasquez*, 2016 WL 315879, at *7 (quotation marks omitted); *accord Gonzalez v. Wal-Mart Stores, Inc.*, 299 F. Supp. 2d 188, 192 (S.D.N.Y. 2004). "Though a plaintiff cannot avoid summary judgment on this issue through mere speculation and conjecture, circumstantial evidence may be sufficient if it supports an inference of causation or negligence." *Feder v. Target Stores*, 15 F. Supp. 3d 253, 256 (E.D.N.Y. 2014). "'A *prima facie* case of negligence based on circumstantial evidence is established when plaintiff's evidence proves that it is 'more likely' or 'more reasonable' that the injury was caused by defendant's negligence than by some other agency.'" *Dolishnya v. Costco Wholesale Corp.*, No. 13-cv-388 (MDG), 2017 WL 1207520, at *3 (E.D.N.Y. Mar. 31, 2017) (quoting *N.Y. Tel. Co. v. Harrison & Burrows Bridge Contractors, Inc.*, 3 A.D.3d 606, 608 (3d Dep't 2004)); *see also Tango v. Costco Wholesale Corp.*, No. 19-cv-483 (SJF) (ARL), 2021 WL 174013, at *5 (E.D.N.Y. Jan. 19, 2021) ("Although the plaintiff need not exclude every other possible cause other than a defendant's breach of duty, the record must render the other possible causes sufficiently remote to enable the trier of fact to reach a verdict based upon the logical inferences to be drawn from the evidence, not upon speculation.") (quotation marks omitted).

Here, there is sufficient circumstantial evidence from which a reasonable jury could infer that Wal-Mart created the dangerous condition that caused Plaintiff's injuries. There is no

dispute that a shelving rack fell on Plaintiff as she shopped at the Monroe Wal-Mart. Def.'s 56.1 Statement ¶ 2. Plaintiff testified that neither she nor anyone else made any contact with the shelving rack immediately before it fell. *Id.* ¶¶ 6-7. Further, Mr. Anton testified that Wal-Mart employees were generally responsible for "adjusting shelving and putting shelving together [] based on instructions from management." Anton Dep. at 19:11-21. Moreover, viewing the evidence in the light most favorable to Plaintiff, the possibility that another customer caused the shelving rack to fall on Plaintiff is remote. Unlike the cases cited by Defendant, *see* Def.'s Mem. at 5, this is not a situation where it is just as likely that another customer caused Plaintiff's injuries by dangerously stacking store merchandise, *see, e.g.*, *Burden*, 2018 WL 4680025, at *5-6; *Rosado v. Home Depot*, 4 A.D.3d 204, 205 (1st Dep't 2004). Mr. Anton testified that "if built correctly, it would take a good amount of force to dislodge" Defendant's shelving, but that it may fall if "not put on properly" in the first place. Anton Dep. at 22:24-23:11. Mr. Anton also testified that if built properly, "[s]omeone actually bumping into [the shelving] would not affect the position or the possibility of the product dislodging." *Id.* at 23:12-24:3.

At this stage, Plaintiff has satisfied her burden of presenting sufficient evidence such that a reasonable jury could find that Defendant created a dangerous condition. *See Dolishnya*, 2017 WL 1207520, at *4. Accordingly, Wal-Mart's motion for summary judgment on this ground is also DENIED.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (ECF No. 26) is DENIED.

An in-person status conference is hereby scheduled for October 12, 2023 at 11:00 a.m. in Courtroom 250 in the White Plains federal courthouse. The parties should be prepared to discuss

specific scheduling for the next phases of this matter, including the additional damages discovery addressed at the October 6, 2022 conference.

Dated: September 27, 2023
      White Plains, New York

**SO ORDERED.**

_____
ANDREW E. KRAUSE
United States Magistrate Judge